IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No: <u>21-CR-356</u> |
| | |
| | 18 U.S.C. § 5104(e)(2) |
| v. | |
| KEVIN SAM BLAKELY | |
| Defendant. | |

**FILED**
OCT 21 2021
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## STATEMENT OF OFFENSE

Pursuant to Federal Rule of Criminal Procedure 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Kevin Sam Blakley, with the concurrence of his attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

*The Attack at the U.S. Capitol on January 6, 2021*

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification are allowed access inside the U.S. Capitol.

2. On January 6, 2021, the exterior plaza of the U.S. Capitol was closed to members of the public.

3. On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint

session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection.  Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

5. At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over the barricades, and officers of the U.S. Capitol Police, and the crowd advanced to the exterior façade of the building.  The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks by U.S. Capitol Police Officers or other authorized security officials.

6. At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the

crowd encouraged and assisted those acts. The riot resulted in substantial damage to the U.S. Capitol, requiring the expenditure of more than $1.4 million dollars for repairs.

7. Shortly thereafter, at approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 p.m. the same day. In light of the dangerous circumstances caused by the unlawful entry to the U.S. Capitol, including the danger posed by individuals who had entered the U.S. Capitol without any security screening or weapons check, Congressional proceedings could not resume until after every unauthorized occupant had left the U.S. Capitol, and the building had been confirmed secured. The proceedings resumed at approximately 8:00 p.m. after the building had been secured. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *Kevin Sam Blakely's Participation in the January 6, 2021, Capitol Riot*

8. On January 5, 2021, the defendant traveled from Dallas, Texas with a friend to Washington, D.C. to attend the "Stop the Steal" rally that was scheduled to take place at the Ellipse, the 52-acre park located south of the White House, on January 6, 2021. The morning of January 6, 2021, the defendant and three others stood in the Ellipse for more than four hours before the rally started and met with other attendees. After President Trump's speech, the defendant joined others as they began to walk toward the U.S. Capitol Building. The defendant made a detour and returned to the Hyatt Regency, where he was staying during his visit to Washington, D.C. From his hotel room, the defendant watched the crowd as they gathered outside the Capitol Building and sometime between 2:00 and 2:30 p.m., the defendant decided to "get closer and more fully

experience this 'once in a lifetime' event." He entered the Capitol grounds by walking over a fence that had been torn down and left on the ground and past police officers "wearing heavy riot gear." Later, he joined a crowd that entered the Capitol Building and made his way to the Rotunda. During this journey and while inside the Capitol Building, the defendant recorded a video in which he said, "America's taking their shit back."

9. Location data reveals and the defendant admits that he meandered around the Capitol from approximately 2:45 p.m. to 4:38 p.m. During this time, the defendant further admits that he wanted to make a statement, rather than leaving when U.S. Capitol Police attempted to force the defendant and others out of the Capitol. He recorded a video of the rioters and the police resistance. The defendant eventually exited the Capitol in the midst of him and other rioters being pepper-sprayed and forced to leave by the police.

10. Once the defendant left the Capitol Building and while remaining on the Capitol grounds, he made additional photographs of himself with the Capitol in the background. Later, he joined other rioters as they yelled, "Storm the Capitol."

11. After returning home to Texas from Washington, D.C., the defendant acknowledges that he deleted his recordings.

12. Law enforcement recovered video footage from the U.S. Capitol Building on January 6, 2021, in which the defendant's image was captured both outside and inside the Capitol Building. At the time, the defendant was wearing distinctive clothing. Subsequently, law enforcement recovered the items of clothing worn by the defendant during the riot as further evidence of the defendant's participation in the riot.

13. The defendant knew at the time he entered the U.S. Capitol Building that he did not have permission to enter the building and remain as he paraded, demonstrated, and/or picketed inside the Capitol Building during the riot.

Respectfully submitted,

CHANNING D. PHILLIPS
Acting United States Attorney
D.C. Bar No. 415793

By:  */s/ Anita Eve*
     AUSA ANITA EVE
     Assistant United States Attorney

## DEFENDANT'S ACKNOWLEDGMENT

I, Kevin Blakely, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 8-26-2021

Kevin Sam Blakely
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 8-26 2021

William D. Cox III
Attorney for Defendant